UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GLORIA COLES<br>    Plaintiff, | :<br>:<br>: |
| v. | :   CIVIL ACTION NO.<br>:   3:04-cv-1623(JCH) |
| JAMES MOORE, ELIZABETH<br>ROSA, AND CHRISTINE NAIR<br>    Defendants. | :<br>:<br>:   September 25, 2006 |

**RULING RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 36]**

The plaintiff, Gloria Coles, brings this action against the defendants, James Moore, Elizabeth Rosa, and Christine Nair. All of the defendants are being sued in their individual capacities only. In her Complaint (Doc. No. 1), Coles alleges retaliation in violation of her First Amendment rights and age discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.[1] The jurisdiction of this court allegedly arises under §§ 1331, 1343(3) and 1367(a) of Title 28 of the United States Code; § 1988 of Title 42 of the United States Code, and the First and Fourteenth Amendments to the United States Constitution.

The defendants have filed a Motion for Summary Judgment (Doc. No. 36) pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the defendants' motion is GRANTED.

---

[1] Coles' Complaint originally alleged discrimination on the basis of age and national and national origin. Subsequent to discovery and the defendants' Motion for Summary Judgment, Coles withdrew her claim based on national origin. Pl. Opposition at 13 (Doc. No. 38).

**I.      STANDARD OF REVIEW**

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

**II.     FACTS[2]**

Coles, a Connecticut resident, was a social worker formerly employed by the Department of Children and Families ("DCF"). The DCF provided services to its clients

---

[2]For the purposes of the instant motion, the court accepts as true facts undisputed by the parties and resolves disputed facts in favor of Coles where she provides evidence to support her allegations.

2

through geographic offices made up of teams of various units, including investigations, on-going treatment, and specialty units. Coles' tenure at DCF lasted from May 27, 1994, until June 1, 2004. Rosa and Nair were DCF employees who supervised Coles during a portion of the events relevant to the current matter. At all times relevant to this matter, Moore was a Program Supervisor for the DCF.

In 1999, Coles worked in the Manchester office of DCF's special investigations unit under the supervision of Patrick Hughes. At that time, DCF divided its investigation unit in Manchester into regular investigations and special investigations. The special investigations unit exclusively handled sexual abuse and "high risk" cases. Local Rule 56(a) (1) Statement at ¶ 10 (Doc. No. 36). In June 1999, Moore became the Program Supervisor of the Manchester office's investigations unit. Id. at ¶ 11. At some point in 2000, Moore changed the special investigations unit into a regular investigations unit and distributed the sexual abuse cases throughout the regular investigation units of his team. Id. at 12. Around June 2000, Moore reassigned Coles from special investigations to the regular investigations. Local Rule 56(a) (2) Statement at ¶ 13 (Doc. No. 37). After Moore transferred Coles, Betty Gorman, an employee five years younger than Coles, replaced Coles in special investigations. Amended Local Rule 56(a) (2) Statement at ¶ 33 (Doc. No. 50).[3] Coles' reassignment to regular investigations still allowed her to handle sexual abuse cases. Local Rule 56(a) (1) Statement.

---

[3] At the behest of the court, Coles amended her Local Rule 56(a)2 Statement to clarify the sequence in which events central to her claims occurred. The court will refer to the Amended Local Rule 56(a) (2) Statement when the relevant information contained therein is more helpful to resolving this matter.

Coles claims that, while she was in regular investigations, she was occasionally required to work on Friday nights.  Amended Local Rule 56(a) (2) Statement at ¶ 27.  The record is unclear as to which Friday evenings Coles had to work.  On these occasions, Coles heard younger female colleagues thanking Moore for buying them drinks.  Id.  According to Coles, some of these younger workers were able to go out on Friday nights either because their names had been removed from the duty rotation or Coles had been "bumped up" in the duty rotation and forced to stay in the office.  Id.

On May 9, 2001, Coles filed a complaint against Moore with the Connecticut Commission on Human Rights ("CHRO") alleging employment discrimination on the basis of her English national origin.  Local Rule 56(a) (1) Statement at ¶ 126.  Coles withdrew the CHRO complaint on June 1, 2001 because she believed she had insufficient factual evidence to show that Moore was aware of her English nationality.  Letter from Coles to James Flynn (June 1, 2001), Ex. 27 to Local Rule 56(a) (1) Statement.[4]

Approximately five months after Coles withdrew her CHRO complaint, she wrote an email to Gail Bakulski, a Program Director at DCF, claiming that she felt threatened by Moore and that he was trying to damage her career in DCF.  Email from Coles to Bakulski (Nov. 9, 2001, 8:43 EST), Ex. 8 to Local Rule 56(a) (1) Statement.  Bakulski reassigned Coles from Moore's investigations team to Gloria Tardiff's treatment team on November 23, 2001.  Local Rule 56(a) (1) Statement at ¶ 46.  Though Coles' lateral

---

[4]The parties agree that, due to a processing error by the CHRO, the DCF did not become aware of Coles' May 9, 2001 CHRO complaint until Coles' withdrawal of the complaint on June 1, 2001.  Local Rule 56(a) (1) Statement at ¶ 127.

transfer to treatment resulted in her receiving the same base pay, Coles contends that she lost ten to fifteen hours of overtime opportunities per week. Coles blames this loss of overtime on the fact that Nair required her to correct reports on her own time. Local Rule 56(a) (2) Statement at ¶ 15, 23.

On December 3, 2001, Coles filed a union grievance regarding a performance appraisal prepared by Rosa pertaining to the period between September 1, 2000 through August 31, 2001. Local Rule 56(a) (1) Statement at ¶ 128. Coles challenged the appraisal, in which Rosa gave her an overall rating of "satisfactory," because she believed that the rating was inaccurate and that the comments accompanying the rating were incorrect and derogatory. Id. Coles filed an additional grievance on December 3, 2001 against the DCF alleging unfair treatment and retaliation. Id. at ¶ 131. Both grievances were denied on January 23, 2003. Id. at 129, 131.

On January 28, 2002, Coles filed a second complaint with the CHRO against Moore and Rosa alleging discrimination due to her age[5] and national origin, and retaliation for previously opposing discrimination in her May 9, 2001 CHRO complaint. Ex. 28 to Local Rule 56(a) (1) Statement. The CHRO dismissed Coles' complaint after finding no reasonable cause to support Coles' allegations. Following this CHRO complaint, Coles was never able to alter her standing within DCF. Though there is a dispute as to why, the parties agree that, by the time Coles left DCF on June 1, 2004, she had been denied a number of applications for promotions to specialty positions, supervisory positions, and investigative positions. Amended Local Rule 56(a) (2)

---

[5] Coles date of birth is September 25, 1945. Ex. 28 to Local Rule 56(a) (1) Statement.

Statement at ¶ 36.

## III. DISCUSSION

### A. Retaliation

Coles first claims that the defendants violated the First Amendment by retaliating against her for filing two complaints with the CHRO. Coles contends that she is entitled to First Amendment protection because she complained about discrimination to an agency separate and apart from the DCF. As a result of her CHRO complaints, Coles argues that the defendants began a passive aggressive campaign to make her tenure at DCF intolerable. The defendants allegedly accomplished this by, *inter alia*, constantly criticizing her work and returning it for corrections, denying Coles overtime opportunities to make these corrections, and laterally transferring her from investigations, a position for which Coles claims to have had extensive training and experience, to treatment, a position which Coles claims rendered her prior experience in investigations useless. Coles alleges that her treatment by the defendants amounted to a constructive discharge, which caused Coles to leave DCF on June 1, 2004.

The defendants challenge Coles' retaliation claim on a number of grounds. They argue, *inter alia*, that Coles' CHRO complaints do not warrant first amendment protection,[6] that Coles did not suffer any adverse employment action, and that Coles

---

[6]In their Memo In Support of Summary Judgment (Doc. No. 38), the defendants conceded that Coles' CHRO complaints were protected speech. The court then held oral argument on July 20, 2006 to allow the parties to address the Supreme Court's recent rulings in Garcetti v. Ceballos, 126 S. Ct. 1951 (2006) and Burlington N. & Sante Fe Ry., 126 S. Ct. 2405 (2006). On September 5, 2006, the defendants submitted, with the permission of the court, supplemental briefing on the issue of whether Coles' CHRO complaints constituted protected speech. See Def. Supp. Brief at 1-6 (Doc. No. 49). In their brief, the defendants retracted their concession that Coles' CHRO complaints were protected under the First Amendment. Id. at 5-6. Coles submitted a supplemental brief addressing this First Amendment question on

cannot establish the necessary causal relationship between her alleged mistreatment and the CHRO complaint. The court concludes that Coles' CHRO complaints were not speech protected by the First Amendment. Therefore, the court will not decide the defendants' other challenges to Coles' retaliation claim.

It is well-accepted that "public employees do not surrender all their First Amendment rights by reason of their employment." Garcetti v. Ceballos, __ U.S. __, 126 S. Ct. 1951, 1957 (2006). In light of this principle, the Second Circuit has found that, "while government enjoys significantly greater latitude when it acts in its capacity as an employer than when it acts a sovereign, the First Amendment nonetheless prohibits it from punishing its employees in retaliation for the content of their protected speech." Locurto v. Safir, 264 F.3d 154, 166 (2d Cir. 2001). To determine whether a federal court is the appropriate venue in which to review whether a public agency unconstitutionally retaliated against an employee for exercising her right to free speech, the first question the court asks is whether the public employee spoke "as a citizen upon matters of public concern" or "as an employee upon matters of personal interest." Connick v. Myers, 461 U.S. 138, 147 (1983); see also Melzer v. Bd. of Ed., 336 F.3d 185, 193 (2d Cir. 2003). If the court finds that the employee spoke as an employee on a matter of personal interest, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Garcetti, 126 S. Ct. at 1958.

The court first notes that Garcetti does not necessarily bar Coles from obtaining

---

September 6, 2006. Pl. Supp. Brief at 1-3 (Doc. No. 50). That brief did not address the defendants' arguments concerning whether Coles spoke on a matter of public concern. However, Coles declined the court's invitation to submit a reply to the defendants' supplemental briefing. As such, the court concludes that Coles has had ample opportunity to offer argument on her retaliation claim.

relief. In Garcetti, the Supreme Court focused on when a public employee speaks "as a citizen" under the First Amendment. See Garcetti, 126 S. Ct. at 1956 (finding that the Ninth Circuit erred in ignoring whether the plaintiff made the speech at issue "as a citizen" and only determining that the speech addressed a matter of public concern). The Court attempted to balance "the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion," with the need to avoid empowering public employees to "constitutionalize the employee grievance." Id. at 1958, 1959. Looking to the facts in Garcetti, the Court reasoned that, while relevant, the facts that the speech at issue was made inside the office, rather than publicly, and that the speech concerned the subject matter of the speaker's employment, were not dispositive. Id. at 1959. The Court ultimately found that "controlling factor" in the case was that the speaker's "expressions were made pursuant to his duties." Id. at 1659-60. Thus, the Court held that, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 1960.

      Here, the parties agree that Coles' official duties did not include filing CHRO complaints against her supervisors. Therefore, the court finds that Coles spoke as a citizen when she lodged these complaints to the extent that this conclusion is not prohibited by the explicit holding in Garcetti.

      As to whether Coles' CHRO complaints addressed a matter of public concern, Coles argues that the complaints are inherently of public concern because they allege discrimination. Coles also contends that the fact that Coles' CHRO complaints were

8

made to an agency outside the DCF strengthens the inference that her treatment by the defendants was a matter of public concern. The defendants respond by arguing that employee grievances dealing only with an employee's personal working conditions do not constitute matters of public concern. Def. Supp. Brief. at 4 (citing Luck v. Mazzone, 52 F.3d 475 (2d Cir. 1995) and Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775 (2d Cir.), cert denied, 502 U.S. 1013 (1991)).

While looking to the record as a whole, a court must analyze the content, form, and context of an employee's speech in order to decide whether it addresses an issue of public concern. Connick, 461 U.S. at 147-48. In the present case, Coles' CHRO complaints seek only personal relief for Coles' discriminatory treatment by the defendants. Though relevant, the fact that Coles may have had personal motives for filing her CHRO complaints cannot be dispositive on the issue of whether her speech touched on a matter of public concern. Reuland v. Hynes, _ F.3d _, 2006 WL 2391163 (2d Cir. Aug. 21, 2006) at *5 ("We hold that the speaker's motive, while one factor that may be considered, is not dispositive as to whether [her] speech addressed a matter of public concern.") The fact remains, however, that Coles' complaint is essentially a grievance against her supervisors. And, where the employee's private motives are expressed in the context of an employee grievance, the Second Circuit has consistently held that the speech at issue does not address a matter of public concern. Id. (citing Ezekwo, 940 F.2d at 781 and Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999).

That Coles complained of treatment that could be construed as unconstitutional discrimination does not transform Coles' CHRO complaint into speech on an issue of public concern. See Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 143 (2d Cir. 1993)

(finding that an employee's complaints of sexual discrimination against only her were not of public concern). As the Second Circuit found in Saulpaugh, the more persuasive factors here are that nothing about Coles' complaints implicates systematic discrimination by the DCF, indicates that Coles wanted to debate issues of discrimination, or suggests that Coles filed her suit as part of a larger effort to combat discrimination at the DCF. Id. (citing Yatvin v. Madison Metro. Sch. Dist., 840 F.2d 412, 420 (7th Cir. 1988). Rather, the content of her complaints brings the court to conclude that Coles was "motivated by and dealt with her individual employment situation." Id.

The fact that Coles made her complaints to the CHRO, an agency outside the DCF, also has little probative value in determining whether she complained about issues of public concern. While a main purpose of the CHRO may be to "eliminate discrimination through civil and human rights law enforcement",[7] the remedy available from a CHRO disposition of Coles' complaint would be limited to Coles. Even if the CHRO's decisions are made public, the complaint is still not on a matter of public concern because the CHRO decision in Coles' case "would convey no information at all other than the fact that a single employee is upset with the status quo." Connick, 461 U.S. at 148. The court finds that Coles' expression of dissatisfaction with her treatment, even when that grievance takes the form of a CHRO complaint, is the essence of a employee grievance. There is no First Amendment protection for speech calculated to redress personal grievances in the employment context. Lewis v. Cohen, 165 F.3d

---

[7] From the CHRO's website, located at http://www.state.ct.us/chro/metapages/purpose.htm

10

154, 163-64 (2d Cir. 1999). Therefore, the court grants summary judgment on Coles' retaliation claim.

## B. Equal Protection

Coles also claims a violation of Equal Protection under 28 U.S.C. § 1983 in that the defendants discriminated against her because of her age. There are two bases to this claim. The first is that, after DCF moved Coles from special investigations to regular investigations, it moved Betty Gorman, a woman five years younger than Coles, from treatment into special investigations to replace her. Coles' other equal protection claim is that she was often "bumped up" on rotation log and forced to work Friday nights. Meanwhile, younger, female colleagues were removed from the rotation log and taken out by Moore to go drinking.

When a plaintiff brings employment discrimination claims under § 1983 that allege violations of the Equal Protection Clause, those claims are to be assessed with the analytical framework used to evaluate claims brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq. Kearney v. County of Rockland, 373 F.Supp.2d 434, 446 (S.D.N.Y. 2005) (citing Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) and Sorlucco v. N.Y. City Police Dep't, 888 F.2d 4, 7 (2d Cir. 1989)). The ADEA makes it illegal for employers to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a) (1). In addition, protection under the ADEA is limited to individuals who are "at least 40 years of age." 29 U.S.C. § 631(a).

Claims brought under the ADEA are analyzed using the burden-shifting standard

that the Supreme Court established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001). Thus, the court will apply this framework to evaluate Coles' equal protection claim.

Under McDonnell Douglas, the plaintiff is first required to establish a prima facie case of discrimination. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). A prima facie case for age discrimination is established by showing that 1) the plaintiff is a member of a protected class; 2) the plaintiff performed her job adequately; 3) the plaintiff suffered an adverse employment action (termination); and 4) that the adverse employment action occurred under conditions giving rise to an inference of discrimination. Burdine, 450 U.S. at 254. Once a plaintiff has established a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. See id. Upon the employer's articulation of a nondiscriminatory reason for the employment action, the presumption of discrimination that arises with the establishment of the prima facie case drops out. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993). The burden then shifts back to the plaintiff to fulfill her ultimate burden of proving that the defendant intentionally discriminated against her in the employment action. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, (2000). In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendant was not the employer's true reason, but was a pretext for discrimination. Id.

A prima facie case combined with a showing that an employer's asserted

justification is false is sometimes, but not always, sufficient to permit a discrimination claim to survive summary judgment. Schnabel v. Abramson, 232 F.3d 83, 89-91 (2d Cir. 200) (citing Reeves, 530 U.S. at 142).  The court must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.' " Schnabel, 232 F.3d at 90 (quoting Reeves, 530 U.S. at 143, 120 S.Ct. 2097).  The plaintiff need not show that age was the only factor motivating any adverse employment actions she suffered in order to make a showing of employment discrimination. See 42 U.S.C. § 2000e-2(m); Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S. Ct. 2148, 156 L.Ed.2d 84 (2003).  In order to defeat summary judgment, though, the plaintiff cannot simply rely on "conjecture or surmise," nor can the plaintiff rest upon "conclusory statements" or "the mere allegations or denials of the adverse party's pleading." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.1995).

"The 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason," regardless of whether the case is presented as one of single or dual motive.  Stratton v. Dep't for the Aging for New York, 132 F.3d 869, 878 (2d Cir.1997).

### 1. Coles' Replacement by Gorman in Special Investigations

Coles' evidence establishing her prima facie case that Moore discriminated against her in favor of Gorman on the basis of age is insufficient because Coles has failed to come forward with sufficient evidence to create an issue of fact concerning whether she suffered an adverse employment action.

13

The Supreme Court recently pronounced that an adverse employment action must be "materially adverse", in that it would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Sante Fe Railway Co. v. White, _ U.S. _, 126 S.Ct. 2405, 2415 (2006). Material adversity must be the focus in determining whether an adverse employment action has occurred because "it is important to separate significant from trivial harms." White, 126 S.Ct. at 2415. The Supreme Court's language and intent in White appears entirely consistent with Second Circuit precedent, which defines an adverse employment action as a "materially adverse change in the terms and conditions of employment [that] is more disruptive than a mere inconvenience or an alteration of job responsibilities." Fairbrother v. Morrison, 412 F.2d 39, 56 (2d Cir. 2005). Prototypical examples of adverse employment actions include termination, demotion via a reduced wage, salary, or job title, a material loss of benefits, or significantly reduced responsibilities. Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (citation omitted).

In the instant case, Coles argues that her lateral transfer from special investigations to regular investigations was materially adverse because the regular investigations unit was less prestigious than special investigations. Amended Local Rule 56(a) (2) Statement at ¶ 20. A loss of prestige, even in a lateral transfer, can certainly constitute an adverse employment action. See de la Cruz v. N.Y. City Human Resources Admin. Dept. of Soc. Servs., 82 F.3d 16, 21 (2d Cir. 1996). However, the only evidence in the record that suggests the inferiority of regular investigations is Coles' own deposition testimony that "prestige wise . . . you normally had to work a while in investigations and prove yourself before you got put in special investigations."

14

Coles Depo. Tr. at 52-53.  Such conclusory statements, unsupported by evidence in the record, cannot serve to create an issue of fact on her prima facie case of retaliation.

Also, Coles appears to claim in her Opposition to Summary Judgment that the move to regular investigations prevented her from maximizing her "exemplary skills and training as forensic interviewer."  Memo. in Opposition at 13.  However, Coles admits that forensic interviewing is considered a basic competency skill that DCF provides to all social workers at the beginning of their employment, and that DCF provides continual forensic training for all DCF units.  See Local Rule 56(a) (1) Statement at ¶ 6, Pl. Response to Def. Statement of Facts at ¶ 6.  Thus, despite the minimal burden Coles has to establish her prima facie case, the court finds no basis upon which a reasonable jury could conclude that she suffered an adverse employment action in being moved to regular investigations.[8]

### 2. Friday Night Work Rotation

Coles also asserts that, from time to time, the defendants manipulated work rotations in the investigations unit so that Coles would have to work on Friday nights while younger employees went out to celebrate.  Local Rule 56(a) (2) Statement at ¶ 18.  The defendants challenge this Equal Protection claim by asserting that, under the

---

[8]Coles admits that her move was part of a general effort by Moore to dismantle special investigations.  See Local Rule 56(a) (1) Statement at ¶ 13, Pl. Response to Def. Statement of Facts at ¶ 13.  Additionally, Coles admits that Moore moved her to regular investigations both to better allocate the limited number of sexual abuse cases that special investigations handled and to avoid special investigations being seen as a more prestigious unit.  See Local Rule 56(a) (1) Statement at ¶ 36, Pl. Resp. to Def. Statement of Facts at ¶ 36.  There is also no dispute that Moore displaced the entire special investigations unit into regular investigations within a few months.  See Local Rule 56(a) (1) Statement at ¶ 14, Pl. Resp. to Def. Statement of Facts at ¶ 14.  Combined with the fact that Coles attempts to compare herself with a woman just five years her junior and also over forty years old at the time of Coles' transfer, these facts severely undermine any inference that her transfer was motivated by discrimination.

fourth prong of the analysis, there is insufficient evidence upon which a jury could infer that age discrimination was a factor in Coles having to work on certain Fridays.

With regard to this element of the disparate treatment test, Coles must show that the defendants "treated [her] less favorably than a similarly situated employee outside [her] protected group." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). Coles must specifically show herself to be "similarly situated in all material respects" to the individuals with whom she compares herself. Shumway v. United Parcel Serv. Inc., 118 F.3d 60, 64 (2d Cir. 1997). In pertinent part, the test for materiality asks whether Coles and the individuals against whom she compares herself were subjected to the same workplace standards. Graham, 230 F.3d at 40 (citing Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 96 (2d Cir. 1999)). Based on these criteria, the court finds that Coles has failed to make a prima facie showing that her work schedule was changed under circumstances suggesting discrimination.

Coles' only evidence that she experienced age discrimination in being assigned to work these Friday nights is her own deposition. As she stated, "some of these young people [had] their names taken off the rotation. And I would get bumped up. And they would get an investigation that wasn't an emergency. And they wouldn't have to take care of it that [Friday] night." Coles Depo. Tr. at 185. The only specific incident of such discrimination is Coles' testimony that Nair forced her to work one Friday evening even though Sandy Grenier may have been ahead of her on the rotation log.[9] Id. at 187.

The defendants challenge Coles' submission by focusing on the one incident of

---

[9]The question posed to Coles before she described this incident was, "Can you give me any specific facts regarding the other workers who were removed from the log so that you were bumped up?" Coles Depo. Tr. at 187.

16

age discrimination that Coles describes in her deposition. According to the defendants, DCF case logs indicate that Nair properly skipped Grenier in the rotation because there was an immediate need for Grenier to prepare legal documents in another case. Nair Aff. ¶¶ 5, 18, Ex. I to Def. Supplemental Brief (Doc. No. 49). From this, the defendants assert that they did not treat Coles less favorably than Grenier. Coles has not come forward with any evidence refuting Nair's explanation for why Coles was bumped up on this particular Friday.

Looking to the record as a whole, the court agrees that there is not sufficient evidence to show that there is a genuine issue of fact for trial that the defendants treated Coles less favorably than a similarly situated employee under the age of forty. Other than Coles' uncorroborated testimony, there is no evidence addressing issues such as how often Coles' younger co-workers were removed from the log; the actual ages of others removed from the log; the circumstances under which the rotation log is normally changed; or how often other workers were required to work on Friday nights. The one specific incident upon which Coles relies has been rebutted by the defendants, and that rebuttal has not been questioned by any of Coles' evidence. Because Coles has put forward a mere scintilla of evidence on this issue, her showing is insufficient to defeat summary judgment. Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (citing Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 252 (1986)).

As Coles failed to make a prima facie showing on either of the bases for her Equal Protection claim, this court grants summary judgment.

## IV.     CONCLUSION

Based on the foregoing analysis, the defendants' Motion for Summary Judgment [Doc. No. 36] is GRANTED.  The clerk is hereby directed to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 25th day of September, 2006.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge